WILLIAMS, Judge.
Plaintiff Joseph Howard Austin’s trainer’s license was suspended after the Louisiana State Racing Commission determined that apomorphine was present in a urine sample taken from a horse for which plaintiff was the trainer. The trial court reversed the Commission. We affirm, although on grounds different from the trial court’s.
On October 28, 1981, a urine sample was taken from the horse “Ravis,” which had raced at the Lakefront Turf Club in Kenner that day. Plaintiff was the official trainer of the horse.
The urine sample was divided into two portions, or “splits,” in compliance with the Rules of Racing of the Louisiana State Racing Commission as set forth in LAC 11-6.53.35. One split was set aside in its original liquid form, only to be tested in case of dispute regarding the other sample. Because the Racing Commission’s laboratory lacked the facilities to perform a mass spect test, the urine sample initially to be tested was subjected to thin layer testing. In this procedure, a portion of the split is placed on a plate along with a standard, which in this case was apomorphine. . Because she felt the thin layer test results were inconclusive, on November 4, 1981, Ms. Pizzo, the Racing Commission chemist, took a powdered form of the same split to Dr. Blake at the University of Kentucky for mass spect testing. To change the sample from a liquid to a powdered form, the powdered sample had to be scraped from the thin layer plate. Dr. Blake evidently found some trace of apomorphine on the powdered sample sent him.
On November 24, 1981, plaintiff was notified that there had been a positive showing of the presence of apomorphine in the urine sample of the horse “Ravis.” Plaintiff demanded that the reserved split be tested by an independent laboratory, at plaintiff’s expense. The Racing Commission delivered the split to Dr. Blake on November 28,1981. Plaintiff was unaware that Dr. Blake had already tested the other portion of the urine sample. Dr. Blake reported in a letter of December 9, 1981, that “[tjhin layer data suggested that apo-morphine might be present in a very low concentration in the urine,” but that “[t]he mass spectral data proved negative,” and concluded that there was “insufficient evidence to confirm the presence of apomor-phine in the urine sample.”
In a Ruling of December 30, 1981, the Racing Commission held that plaintiff had violated the rule prohibiting medications including apomorphine.
Plaintiff requested and was granted a suspensive appeal from the Ruling. After an appeal hearing on January 22, 1982, the Racing Commission upheld the Ruling. Plaintiff was suspended for sixty days.
Plaintiff petitioned for and was granted judicial review and a stay of the Racing Commission decision pending that decision.
The trial court rendered judgment on January 25, 1983, reversing the Commission’s decision. In its reasons for judgment, the court wrote:
The Court finds that LAC 11-6:53.35 and LAC 11-6:53.37.1 were not followed in these proceedings. The Louisiana Rules of Racing specifically provide that a urine sample shall be divided into an initial sample and a split sample to be used for future testing. LAC 11-6:53.-37.1 states, as follows:
*60 ... Both parts shall be treated with a proper amount of ascorbic acid to preserve the sample against deterioration of the sample ingredients. ■
As testified to at trial (page 152 of Transcript of the Louisiana State Racing Commission), the split sample did not have the additional step of having ascorbic acid added to it.
Therefore, the Court is of the opinion that the decision of the Louisiana State Racing Commission, issued January 22, 1982, should be reversed.
Defendant Racing Commission applied for and was denied a new trial on April 15, 1983. On April 25, 1983, defendant appealed to this court, alleging trial court error in the reversal of the Commission’s decision rendered January 27,1982 on the basis that Rule of Racing LAC 11-6:53.37.1 was not followed, because that rule was not adopted as a Rule of Racing until August 20, 1982.
Plaintiff asserts that while LAC 11-6:53.-37.1 may not have been a specific rule at the time of this case, the duty of care in the handling of urine specimens that it collected was part of the general rule contained in LAC 11-6:53.37. Plaintiff contends that the horse was not medicated with apomor-phine, but rather, that in scraping off the initial urine sample from the thin layer plate, the Commission’s chemist caused some of the apomorphine standard to be scraped off as well, adulterating the urine sample. This, plaintiff contends, was in violation of the Commission’s duty of care in handling the urine sample. That duty is set out in LAC 11-6:53.35 and 11-6:53.37, both of which were in effect at all times relevant to this case. These provisions read:

11-6:53.35

Each specimen shall be divided into portions so that one portion shall be used for initial testing for unknown substances, and another portion shall be preserved for further testing as the Commission may direct. The Commission chemist shall be responsible for safeguarding and testing each specimen delivered to his laboratory by the Commission representative. (Emphasis added). 11-6:53.37
Upon the finding that a test for prohibited substances is negative, the remaining portions of such specimen may be discarded. Upon the finding of test results which are suspicious, positive, or indicative of prohibited substances, such tests may be reconfirmed, and the remaining portion, if available, of such specimen shall be preserved and protected until such time as the stewards rule it may be discharged. (Emphasis added).
Defendant asserts that the plaintiff’s allegations of lack of due care are unfounded because the record as made before the Commission indisputably demonstrated the detection of apomorphine in the initial split tested. Defendant argues that the fact that the second urine sample tested did not confirm the presence of apomorphine in the first does not invalidate the initial test findings. Evidently defendant believes there is an explanation for the negative findings of the second sample, although he refers to a trial record not provided to the court, rather than explaining his reasons. Defendant concludes that the court has no grounds for reversal under La.R.S. 49:964(G). That provision of the Louisiana Administrative Procedure Act sets out the conditions for judicial intervention as follows:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
*61 (6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
At the Racing Commission hearing, Ms. Pizzo admitted that the thin layer procedure was not a reliable test for the detection of apomorphine. Dr. Blake admitted that if the thin layer test plate were not scraped with great care, both urine and the apomorphine that had been placed on the thin layer plate as a standard could appear in subsequent testing of the urine sample. Ms. Pizzo scraped the test plate and sent the sample to Dr. Blake, who evidently did detect some apomorphine. On the other hand, the untested reserve sample of urine, when tested for the first time by Dr. Blake using mass spect procedure, showed no apomorphine present. Mr. Rayburn, a Racing Commission Steward, admitted that he noticed nothing peculiar or unusual about the horse and that it was not nervous or shying away from people. Dr. Blake testified that a horse under the influence of apomorphine would run around its stall, jumping up and down, would appear frightened, and would move away from humans. He added that the clinical signs of apomor-phine administration would very definitely be readily observed, and that Mr. Rayburn’s description of the horse’s behavior on the day of the race did not comport with that of an animal medicated with apomor-phine.
We agree with the trial court that the Commission’s decision was in error. The requirement of LAC 11-6:53.37.1 that ascorbic acid be used as a preservative was simply the formulation of a specific procedure to be followed to aid the Commission in meeting the duty of care imposed upon it by LAC 11-6:53.35 and 11-6:53.37. Regardless of whether 11-6:53.37.1 was in effect, the Commission breached its duty to safeguard, preserve, and protect the laboratory specimen entrusted to it, in violation of the standard imposed by 11-6:53.35 and 11-6:53.37. The likelihood that the test’s indication of apomorphine medication was the result of the Commission’s negligent handling of the specimen, rather than any actual medication of the horse, is too high for us to allow the Commission’s decision to be upheld. We find that substantial rights of the plaintiff have been prejudiced because the Commission’s decision was manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. La.R.S. 49:964(G).
For the foregoing reasons, the judgment of the trial court is AFFIRMED.
AFFIRMED.